**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | | |
|---|---|---|---|
| HYPERION, INC., | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | No. 09-758C | |
| v. | ) | | |
| | ) | (Judge Eric G. Bruggink) | |
| THE UNITED STATES, | ) | | |
| | ) | | |
| Defendant. | ) | | |

**DEFENDANT'S MOTION FOR JUDGMENT UPON THE**
**ADMINISTRATIVE RECORD AND RESPONSE TO PLAINTIFF'S**
**MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

TONY WEST
Assistant Attorney General

JEANNE E. DAVIDSON
Director

KIRK MANHARDT
Assistant Director

WILLIAM J. GRIMALDI
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
        8th Floor
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 305-4436
Fax: (202) 305-1571

December 3, 2009                    Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF THE ISSUES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS AND COUNTER-STATEMENT OF FACTS. . . . . . . . . . . . . . . . 2

      A.    The Solicitation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.    Receipt of Proposals and Initial Evaluation.. . . . . . . . . . . . . . . . . . . . . . 9

      C.    Competitive Range Determination, Debriefing, and Subsequent Bid
           Protest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    I.    The Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      A.    Standard For Procurement Challenges.. . . . . . . . . . . . . . . . . . . . . . . . . . 15

      B.    Standard For Judgment Upon The Administrative Record. . . . . . . . . . . 17

    II.    VCA Evaluated Offerors in Accordance With the Solicitation and Applicable
       Laws and Regulations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      A.    VCA Evaluated Hyperion Under the Technical / Management Factor
           in Accordance With the Solicitation and Applicable Laws and
           Regulations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      B.    VCA Assigned Hyperion Weaknesses and Significant Weaknesses
           Under the Technical / Management Factor in Accordance With the
           Solicitation and Applicable Laws and Regulations . . . . . . . . . . . . . . . . 23

    III.    VCA's Evaluation of Hyperion's Technical / Management Volume Was in
        Accordance With the Announced Evaluation Criteria.. . . . . . . . . . . . . . . . . . . 25

IV.    VCA's Assignment of Red/Unacceptable to Hyperion Under the Technical /
       Management Volume Was Rational and Consistent With the Solicitation's
       Adjectival Ratings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

V.     Even if Hyperion Can Prove VCA Committed a Procurement Violation, It
       Cannot Prove That It Was Prejudiced By Such an Error . . . . . . . . . . . . . . . . . . . 33

VI.    Even If Hyperion Can Prove That VCA Committed Prejudicial Errors, This
       Court Should Not Permanently Enjoin VCA From Making Awards Using the
       Current Competitive Range . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

Bannum, Inc. v. United States,
    404 F.3d 1346 (Fed. Cir. 2005).................................................................. *passim*

Benchmade Knife Co. v. United States,
    79 Fed. Cl. 731 (2007). ........................................................................ 32

Beta Analytics Int'l, Inc. v. United States,
    67 Fed. Cl. 384 (2005). ..................................................................... 17, 32

Blue & Gold Fleet, L.P. v. United States,
    492 F.3d 1308 (2007)......................................................................... 22, 24

Bromley Contracting Co. v. United States,
    15 Cl. Ct. 100 (1988). ........................................................................ 16

Califano v. Sanders,
    430 U.S. 99 (1977)............................................................................. 16

Camp v. Pitts,
    411 U.S. 138 (1973)........................................................................... 18

Campbell v. United States,
    2 Cl. Ct. 247 (1983). .......................................................................... 16

CCL Serv. Corp. v. United States,
    48 Fed. Cl. 113 (2000). ....................................................................... 18

Cent. Transp. Int'l LLC v. U.S.,
    63 Fed. Cl. 336 (2004). ....................................................................... 19

Cincom Sys., Inc. v. United States,
    37 Fed. Cl. 663 (1997). ....................................................................... 16

Citizens to Pres. Overton Park, Inc. v. Volpe,
    401 U.S. 402 (1971)........................................................................... 16

Dismas Charities, Inc.,
    No. B-284754, 2000 WL 669628 (Comp. Gen. May 22, 2000). ...................... 19

Dismas Charities, Inc. v. United States,
    61 Fed. Cl. 191 (2004). ........................................................................ 26

E.W. Bliss Co. v. United States,
    77 F.3d 445 (Fed. Cir. 1996) ............................................................... 32

Fed. Mgmt. Sys. v. United States,
    61 Fed. Cl. 364 (2004). ........................................................................ 19

Florida Power & Light v. Lorion,
    470 U.S. 729 (1985).............................................................................. 18

Impressa Construzioni Geom. Domenico Garufi v. United States,
    238 F.3d 1324 (Fed. Cir. 2001)............................................................ 16

Int'l Res. Recovery, Inc. v. United States,
    60 Fed. Cl. 1 (2004). ........................................................................... 25

Ironclad / EEI v. United States,
    78 Fed. Cl. 351 (2007). ........................................................................ 35

Lions Raisins, Inc. v. United States,
    51 Fed. Cl. 238 (2001). ........................................................................ 17

Magellan Corp. v. United States,
    27 Fed. Cl. 446 (1993). ........................................................................ 36

Metcalf Const. Co. v. United States,
    53 Fed. Cl. 617 (2002). ........................................................................ 31

M.W. Kellogg Co. v. United States,
    10 Cl. Ct. 17 (1986). ........................................................................... 16

Novosteel SA v. United States & Bethlehem Steel Corp.,
    284 F.3d 1261 (Fed. Cir.2002)................................................... 34, 35

PGBA, LLC v. United States,
    389 F.3d 1219 (Fed. Cir. 2004)................................................... *passim*

Ramcor Servs. Group, Inc. v. United States,
    185 F.3d 1286 (Fed. Cir. 1999)............................................................ 16

Raymond Assocs., LLC,
    No. B-299496, 2007 WL 1662648 (Comp. Gen. May 29, 2007). .................... 21

Redland Genstar, Inc. v. United States,
  39 Fed. Cl. 220 (1997). ............................................................ 16

Software Eng'g Servs., Corp. v. United States,
  85 Fed. Cl. 547 (Fed. Cl. 2009). ............................................ 25, 32

Synetics, Inc. v. United States,
  45 Fed. Cl. 1 (1999). .............................................................. 16

Tech Sys., Inc. v. United States,
  50 Fed. Cl. 216 (2001). .......................................................... 17

The Cube Corp. v. United States,
  46 Fed. Cl. 368 (2000). .......................................................... 16

United Enter. & Assocs. v. United States,
  70 Fed. Cl. 1 (2006). .............................................................. 25

United States v. Ford Motor Co.,
  463 F.3d 1267 (Fed. Cir. 2006) ............................................... 35

**REGULATIONS**

48 C.F.R. §15.305(a) ................................................................ *passim*

48 C.F.R. §15.306(c) ................................................................. 18

**STATUTES**

5 U.S.C. § 702, 706(2). ............................................................ 16

28 U.S.C. § 1491(b)(1), (4). ...................................................... 15, 16

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**(Bid Protest)**

| | | |
|---|---|---|
| **HYPERION, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 09-758C** |
| **v.** | ) | |
| | ) | **(Judge Eric G. Bruggink)** |
| **THE UNITED STATES,** | ) | |
| | ) | **(Under Seal)** |
| **Defendant.** | ) | |

**DEFENDANT'S MOTION FOR JUDGMENT UPON THE
ADMINISTRATIVE RECORD AND RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

Pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims
("RCFC"), defendant respectfully requests the Court to grant the United States judgment upon
the administrative record and deny plaintiff's motion for judgment upon the administrative
record in the above-captioned action. The administrative record demonstrates that the
Government's decision to exclude plaintiff, Hyperion, Inc. ("Hyperion"), was rational.

DEFENDANT'S BRIEF

STATEMENT OF THE ISSUES

1.      Whether the Virginia Contracting Authority evaluated the technical section of
Hyperion's proposal in accordance with the Federal Acquisition Regulation.

2.      Whether the Virginia Contracting Authority evaluated Hyperion's proposal in
accordance with the evaluation criteria delineated in the Solicitation.

3.     Whether the Virginia Contracting Authority's assignment of an unacceptable rating to Hyperion for its technical and management solution was rational.

4.     Whether Hyperion, as the twelve-ranked offeror, is prejudiced by any potential procurement violation.

5.     Whether Hyperion has demonstrated an entitlement to injunctive relief.

<u>STATEMENT OF FACTS AND COUNTER-STATEMENT OF FACTS</u>

On May 26, 2009, the Virginia Contracting Activity ("VCA") issued a multiple award Defense Intelligence Agency ("DIA") Solutions for the Information Technology Enterprise ("SITE") request for proposal, No. HHM402-09-R-0050 (the "RFP" or Solicitation"), to establish the acquisition framework for delivering information technology ("IT") services and capabilities to support the intelligence needs of DIA, the Uniformed Services, the Combatant Commands ("COCOMs") and other agencies in the intelligence community. Administrative Record ("AR") 570-71, 1286, 12857. Through SITE, the Government intends to provide a contract vehicle which will allow participating organizations to obtain comprehensive IT technical support services to satisfy mission requirements from a mix of large and small businesses. AR 1286. A multiple award indefinite delivery / indefinite quantity contract, SITE will allow the selected awardees to propose solutions for task orders containing distinct statements of work, statements of objectives, or performance work statements. <u>Id.</u>

SITE will allow the participating agencies to obtain worldwide coverage for IT requirements and technical support services that will provide assistance to the Government through system design, development, fielding, and sustainment of global intelligence and command and control ("C2") assets vital to the security of the United States. <u>Id.</u> Agencies may

request such support for contingency and exercise operations in an operational area where forces are deployed and deemed hazardous. Id. Providing support for both classified and unclassified programs, SITE awardees will supply responsive, flexible, adaptive, and timely solutions for organizations to satisfy current and future IT requirements. Id. The form of such support under SITE may vary, from per-call and on-call support to full-time attendant support at sites around the world, including locations considered high risk, crisis, or danger areas. AR 1286-87. The maximum ceiling amount for the SITE program is $6,600,000,000.00, with the minimum amount of $50,000.00. AR 990.

A.     The Solicitation

The second amended Solicitation required offerors to submit their proposals in six volumes: (1) Executive Summary / Contract Information; (2) Past Performance; (3) Security; (4) Small Business Subcontracting Plan; (5) Technical Management; and (6) Price / Cost. AR 1329. Small business offerors were not required to submit Volume IV, Small Business Subcontracting Plan. Id. Section L of the Solicitation explicitly warned offerors that the information provided in their proposals "should be complete and accurate to enable the Government to assess fully [the offerors' ability to provide the required services and whether [the offerors] represent the best value to the Government." Id. Offerors were to, "at a minimum, address all functional areas in the [Statement of Objectives ("SOO")]." AR 1334. The Government, in the Solicitation, reserved the right to make SITE awards based on the initial proposals without discussion. Id.

The Solicitation envisioned approximately eight awards under the SITE contract, with approximately four going to responsible small businesses whose offers, conforming to the Solicitation, will be the most advantageous to the Government. AR 1338. The evaluation of the

offerors would be based upon the five evaluation criteria factors: (1) Technical/Management; (2) Past Performance; (3) Small Business Plan; (4) Security; (5) and Cost/Price. Id. These factors are listed in their order of importance. Id. VCA would not evaluate small business offerors under Factor 3, Small Business Plan. AR 1339.

The Government was to evaluate and assign a Color Rating for each non-price factor. AR 1347. The Source Selection Plan provided these adjectival ratings by which the evaluators could describe the offeror's Technical / Management volumes. AR 524. Evaluators could assign an offeror a Blue, Green, Yellow, or Red rating. Id. The Plan defined Yellow / Marginal and Red / Unacceptable ratings as follows:

| Color | Technical Capability | Strengths | Weaknesses |
|-------|---------------------|-----------|------------|
| Marginal (Yellow) | The proposal is marginal; Government doubts the offeror will be able to meet all performance requirements. Based on the Offeror's performance record, doubt exists that the Offeror can satisfactorily perform the proposed effort. | Some strengths exist with limited benefit to the Government | A few weaknesses exist; they are correctable by the Contractor with moderate Government contract administration. |
| Unacceptable (Red) | The proposal is highly inadequate; the offeror cannot meet performance requirements. The proposal is likely to cause serious disruption of schedule, significant increases in cost, erosion of quality, or degradation of performance even with special Contractor emphasis and close Government monitoring. | There are no beneficial strengths. | Numerous weaknesses exist that are so significant that a proposal re-write is not feasible within a suitable timeframe. |

Id.

4

In order to make awards, the Solicitation instructed the VCA to perform a trade-off analysis of non-price factors against price to determine the best value to the Government.  AR 1338.  The Solicitation considered the combined non-price evaluation criteria significantly more important than price.  Id.  Price would become a major factor in the award decision if the non-price volumes of the offerors were substantially equal.  Id.  The VCA would also conduct a risk assessment, which it would consider in the trade-off analysis.  Id.

Section M of the Solicitation, like Section L, warned offerors of the need to provide complete and accurate information in their initial offers.  First, Section M warned offerors of their responsibility to provide information and evidence that clearly demonstrates their ability to respond satisfactorily to the evaluation factors.  Id.  Then, it noted that the Government intended to make awards without exchanges or discussions with the offerors.  Id.

Five elements comprise the first factor, Technical/Management, which, in descending order of importance, are: (1) Technical Experience to the functional areas listed in SOO; (2) the Contractor's SITE Organization/Management Team and Proposed Management Structure; (3) the Contractor's Recruiting, Training, and Employee Retention Plan; (4) Transition Experience; and (5) Logistics Administration and Worldwide Support Capability.  AR 1339.  During evaluation of each proposal, VCA was to assign an overall color rating and a written narrative reflecting the offeror's technical experience, strengths, and weaknesses based on the offeror's responses to these five elements.  Id.  The Solicitation provided standards related to the Technical / Management Factor for evaluation.  AR 1342-43.

Under the first element, Technical Experience, the Solicitation required the offeror to provide the depth and breadth of its experience and expertise performing as a prime or a

subcontractor with respect to the sixteen functional areas identified in the SOO.  AR 1339.[1]  The

Solicitation required each offeror to submit a matrix, mapping ten contracts performed by the

offeror in the past three years to the sixteen specific functional areas identified in the SOO.  Id.

The offerors were to cross-reference their experience noted under this element with the ten

contracts provided for Past Performance evaluation.  Id.  The Solicitation allowed offerors to

include additional contract references in the matrix so long as the offeror identified them as

separate references from the ten Past Performance references.  Id.  The Technical / Management

Factor standard related to the first elements is, "[t]he offeror has experience- [sic] to meet the

requirements for each of the functional areas identified in the SOO."  AR 1342.

For the second Factor, Past Performance, offerors were to provide a matrix and

"'FACTS' Sheet" documenting their past performance on up to ten contracts or subcontracts

having tasks performed similar to the SITE functional areas, that they, or their proposed

subcontractors, performed within the past three years.  Id.  The Solicitation explained, under the

Past Performance Factor, offerors were to be measured on the degree to which they have met

contractual promises and satisfied their customers: "Past performance is a measure of the degree

to which an Offeror has kept its previous contractual promises and thus satisfied its customers, to

include management of teaming arrangements for large businesses."  AR 1343.  The Solicitation

---

[1] These sixteen functional areas identified in the SOO are: (1) Program & Project
Management Services; (2) Technology Assessment and Evaluation Services; (3) Systems
Engineering; (4) Operations Support Services; (5) Network Operations and Administration; (6)
Storage Services; (7) Web Services and Content Management; (8) Acquisition and Property
Management Services; (9) Maintenance and Remote Diagnostic Services; (10) Administrative
and Special Services; (11) Information Assurance Services; (12) Security Management; (13) SCI
Personnel and Information Security Support; (14) Risk Management; (15) Testing and
Verification Services; and (16) Training Services.  AR 1339-41.

explained that each offeror's past performance would be evaluated for scope, complexity and size.  Id.  Further, the Government would use the offerors' past performance to analyze risk.  Id.  The Solicitation provided six standards for Past Performance for use by the Government in evaluating the offerors:

- The offeror's demonstrated performance was on related efforts completed within the past three years or is on-going.

- The combined past performance efforts cited were at least valued at $10,000,000 including all options.

- Customer assessments of previous contracting efforts indicate the scheduling standards were achieved without affecting cost or performance.

- Quality of services provided were professional and at the level expected by the customer.

- Past Performance Information demonstrates the offeror's team can effectively manage large contracts similar in scope, complexity and size.

- Past Performance Information demonstrates previous teaming arrangements and positive business relationships.

AR 1344.

VCA used separate evaluation teams to evaluate the different factors.  During the pre-proposal Questions and Answers, VCA warned offerors three times that cross-referencing between the volumes was insufficient to meet the evaluation criteria because separate evaluation panels would be reviewing the proposals.  First, in Question 261, when asked whether full credit would be received if an offeror cross-referenced volumes, AR 1545, VCA replied that separate evaluation teams would be utilized and a cross reference was insufficient to meet the requirements.  AR 1546 ("No. The past performance will be evaluated validated seperately [sic] and at a different time by a different team, so providing a cross reference in the Technical/

Management volume does not meet the requirement."). Second, when questioned regarding the page count of Volume V and the SOO-Matrix in question 340, AR 1511, VCA responded that offerors should not assume that the separate evaluation teams would have access to proposal volumes regarding other proposal areas. AR 1514 ("Each volume should stand alone as there will be separate teams evaluating separate volumes. Offerors should not assume that separate teams will cross reference or even be given access to volumes from another proposal area."). Third, in response to question 336, the VCA noted that the Technical / Management Volume must stand alone. AR 1513; 1514 ("Volume V should stand alone."). The Government incorporated these Questions and Answers into the Solicitation via Amendment 0002. AR 1283.

The Government intends to make multiple awards under the SITE solicitation "to the responsive and responsible offerors whose offer, conforming to the solicitation will be the best value to the Government, all evaluation factors considered in accordance with the evaluation criteria." AR 1347. The Government was to group the proposals into either the Small Business track or the Full and Open Business track, with the evaluation being the same, but for Factor 3, Small Business Plans. Id.

The Solicitation permitted the Government to make a competitive range determination based upon the ratings of the proposals against the evaluation criteria. Id. The Source Selection Decision process, which the Solicitation noted would be followed for competitive range decisions as well, required VCA to rank the offers in descending order, based on their individual aggregate non-price evaluation factor scores. Id. The Government was to list next to each score the offer's associated aggregate cost/price. Id. The Government was then to conduct a paired trade-off best value analysis. Id. This trade-off was to continue for all proposals until the

Government established a Composite Best Value Final Ranking recommendation.  Id.  The

Contracting Officer and the SSA was to make a selection decision or competitive range

determination using this Composite Best Value Final Ranking Recommendation and following

consultation with Source Selection Advisors.  Id.

B.     Receipt of Proposals and Initial Evaluation

The Government received twenty-nine proposals in response to the SITE solicitation.  AR

12857.  Eighteen of these offers were from small businesses, including one from plaintiff,

Hyperion.  AR 12857, 12859.

During the evaluation of the initial proposals, the Government assigned Hyperion the

following ratings in the non-Price factors:

|          | Technical / Management | Past Performance | Security |
|----------|------------------------|------------------|----------|
| Hyperion | Red / Unacceptable | Green / Acceptable | Green / Pass |

AR 12859.

Under the Technical / Management Factor, Hyperion received a rating of Red /

Unacceptable, a rating which indicates that its proposal was highly inadequate and that Hyperion

could not meet the performance requirements.  AR 12482, 12859.  Such a rating showed that

Hyperion's technical and management solution contained "[n]umerous weaknesses . . . that are

so significant that a proposal re-write is not feasible in a suitable timeframe."  AR 12482.

The Technical / Management Panel, in its Report, explained this rating by noting that the

proposal lacked a depth of experience in core areas of the SITE procurement, leading to serious

doubts as to whether Hyperion can successfully perform the required work.  AR 12524

("[Hyperion's] proposal lacks a depth of experience across important, core IT functional areas

and the government seriously doubts that the offeror can satisfactorily perform the proposed effort."). The Panel found, "[b]ecause of significant weaknesses, due to a lack of demonstrated experience throughout offeror's proposal, the proposal is rated as unacceptable." Id. The Panel explained that while Hyperion did have four strengths under this Factor, its proposal had numerous significant weaknesses. AR 12524. The Panel identified significant weaknesses in "systems engineering services, program and project management services, network operations and capacity planning, information assurance, operations support services, and storage services." Id. Further, the Panel identified a significant weakness for Hyperion's failure to "demonstrate adequate experience in the management of contract transitions." Id. In addition to these significant weaknesses, the Panel identified several weaknesses for the failure to "demonstrate[] depth and breadth of experience in technology assessment and evaluation services, acquisition and property management services, risk management, maintenance and remote diagnostic services, security management, testing and verification services, and technical standards and architectures." Id. The Panel reported that Hyperion, under the Experience element of this Factor, failed to demonstrate its experience and expertise with respect to 12 of 16 functional areas identified in the SOO. Id. ("A deficiency report states that offeror's proposal does not provide detailed information and evidence that demonstrates their ability to successfully perform in 12 of 16 functional areas of the SOO.").

Regarding the Past Performance Factor, the Past Performance Panel found that Hyperion's proposal warranted a Green / Acceptable rating. AR 12293. The Panel justified this rating by explaining that Hyperion "is very good at meeting the customer's scheduling standards, finding cleared qualified managers, and personnel that can provide good performance during

surges." Id.  The Panel added that the Hyperion team "provide[s] very good quality of services" and is "able to manage large contracts." Id.  Hyperion "show[ed] strength in teaming with contractors and business relationships with the government" and has "good managers and employees." Id.

C.      Competitive Range Determination, Debriefing, and Subsequent Bid Protest

Following the initial evaluation, the Source Selection Advisory Committee ("SSAC") ranked the offerors based upon the non-price Factor in accordance with the RFP, finding that Hyperion was the 12th rated offeror out of the 18 small businesses:

| | Tech / Mgt | Past Perf. | Security | Non-Cost Rank | Cost Rank |
|---|---|---|---|---|---|
| ■ | ■ | ■ | ■ | 1 | 9 |
| ■ | ■ | ■ | ■ | 2 | 1 |
| ■ | ■ | ■ | ■ | 3 | 17 |
| ■ | ■ | ■ | ■ | 4 | 11 |
| ■ | ■ | ■ | ■ | 5 | 6 |
| ■ | ■ | ■ | ■ | 6 | 16 |
| ■ | ■ | ■ | ■ | 7 | 5 |
| ■ | ■ | ■ | ■ | 8 | 2 |
| ■ | ■ | ■ | ■ | 9 | 15 |
| ■ | ■ | ■ | ■ | 10 | 10 |
| ■ | ■ | ■ | ■ | 11 | 8 |
| Hyperion | Red | Green | Green | 12 | 14 |
| ■ | ■ | ■ | ■ | 13 | 4 |
| ■ | ■ | ■ | ■ | 14 | 7 |
| ■ | ■ | ■ | ■ | 15 | 3 |
| ■ | ■ | ■ | ■ | 16 | 13 |
| ■ | ■ | ■ | ■ | 17 | 18 |
| ■ | ■ | ■ | ■ | 18 | 12 |

AR 12859. Following this, in accordance with the RFP, the SSAC determined the overall ranking of the small business offerors, weighing the non-price factors more heavily than cost. AR 12861. The only offerors who changed rankings from their non-price rankings were the seventh and eighth offerors, who switched positions. Id. The SSAC found Hyperion to be the 12th rated small business offeror for the SITE small business procurement. AR 12861.

The SSAC then recommended that all offerors with Yellow / Marginal, ratings for the Technical / Management Factor, an Acceptable rating in Past Performance, and a Pass in Security warranted inclusion into the competitive range. AR 12865. The SSAC stated that those offerors with Marginal ratings "would not require entire rewrites" and if given opportunity, "would more clearly demonstrate their experience and expertise . . . ." Id. The SSAC added, "coupled with their cost/price standing, the SSAC feels these offerors should be placed in the competitive range and afforded the opportunity to address their proposals' weaknesses." Id. The SSAC explained that the offerors with Red / Unacceptable, ratings for Technical / Management failed to sufficiently demonstrate their experience or expertise in that significant proposal volume, had multiple significant weaknesses, and most received deficiency reports. AR 12866. Thus they did not warrant inclusion in the competitive range. Id. "The SSAC fe[lt] the majority of these "Unacceptable" proposals would require entire rewrites and are therefore not good candidates for the competitive range." Id. The SSAC added, "couple with their cost/price standing, the SSAC feels these offerors should not be placed in the competitive range." Id.

Specifically regarding Hyperion, the SSAC recommended removal from the competitive range. See AR 12869-70. The SSAC explained, "the unacceptable rating in Technical and Management and high cost/price ranking cannot be ignored." AR 12869-70. Hyperion's

"significant weaknesses and weaknesses were across major components of the technical/ management functional areas and lacked sufficient evidence to demonstrate [Hyperion] possesses the knowledge[,] depth or breadth to successfully execute 12 of 16 Technical/Management Assessment Factors of the SITE Statement of Objectives." Id. The SSAC added that Hyperion received a Deficiency Report for their Technical/Management volume. Id. "The SSAC unanimously believe[d] [Hyperion] will not be able to correct [its] significant weaknesses or weakness, nor be able to sufficiently demonstrate acceptable depth and breadth of experience in these functional areas." Id.

The Source Selection Authority ("SSA"), in the SITE-Source Selection Authority Competitive Range Determination, concurred with the SSAC competitive range recommendation after overseeing the entire evaluation and reviewing all documentation. AR 12906 ("As SITE Source Selection Authority, I have provided oversight of the entire evaluation process, as well as reviewed all documentation and concur with the Source Selection Advisory Council Competitive Range Determination Recommendation."). The SSA added that the decision to exclude those proposals with Red / Unacceptable, rating for Technical / Management was justified given that "no better cost scores could overcome these lower unacceptable Tech/Mgt score and thus the overall value to the Government was lower" for these proposals. AR 12907.

Thus, on October 7, 2009, the contracting officer drafted a memorandum explaining that

████████████████████████████████████████████████████

████████████ remained in the competitive range. AR 12856.

Hyperion received its debriefing from the Government on October 26, 2009.  AR 13164, 13196.  The contracting officer notified Hyperion that as of October 27, 2009, the debriefing was closed.  AR 13193.  Eight days later, on November 6, 2009, Hyperion filed the instant bid protest in this Court.

## SUMMARY OF THE ARGUMENT

The administrative record demonstrates that VCA did not commit any errors when excluding Hyperion, the 12th-ranked offeror, from the competitive range.    First, the record establishes that VCA properly conducted the initial evaluation and established a competitive range, reasonably excluding, among eleven others, Hyperion.  Plaintiff, however, in essence, argues that its Green / Acceptable Past Performance Factor rating mandates a higher Technical / Management rating.   Hyperion's argument is based upon a misunderstanding of the applicable procurement law, the stated goals of these two Factors in the Solicitation, and the evaluation.  Hyperion's additional challenge to four identified significant weaknesses and weaknesses for failure to demonstrate its capabilities under the first element of the Technical / Management Factor is also both untimely and meritless.  It was the responsibility of Hyperion to draft an accurate proposal that conforms to the Solicitation requirements.

VCA also evaluated the offerors in accordance with the evaluation criteria stated in the Solicitation.  The Government evaluated the offerors under each Factor, created both non-price and price rankings, and performed a trade-off to determine the overall ranking of the offerors.  The record thus belies Hyperion's contention that VCA deviated from the stated criteria.

Additionally, in accordance with the solicitation and precedent, VCA rationally assigned Hyperion a Red / Unacceptable for its Technical / Management Volume because Hyperion's

solution contained numerous significant weaknesses and weaknesses that were not correctable. Hyperion's solution did not warrant a Yellow / Marginal rating because such a rating applies to proposals that could be corrected with discussions. Hyperion's argument otherwise is both untimely and an attempt to substitute its own judgment for that of VCA.

Further, even if Hyperion can prove that a procurement error occurred during the initial evaluation, as the 12th-ranked offeror, it cannot demonstrated that it was prejudiced by such a violation.

Finally, even if Hyperion can prove prejudicial errors, it has not addressed, let alone demonstrated, that it is entitled to injunctive relief. Rather, the harm to the United States and national security would greatly outweigh any, at this point unmentioned, harm to Hyperion, and granting Hyperion's requests for injunctive relief would not be in the public interest.

ARGUMENT

I.     The Standard of Review

A.     Standard For Procurement Challenges

Judicial review of the agency's actions in bid protest cases is not a <u>de novo</u> proceeding; rather, the scope of the review is limited to the administrative record. The proper standard of review is whether the agency action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law based solely upon the administrative record. 28 U.S.C. § 1491(b)(1), (4); 5 U.S.C. § 702, 706(2)(A); <u>Impressa Construzioni Geom. Domenico Garufi v. United States</u>, 238 F.3d 1324, 1332 (Fed. Cir. 2001); <u>see also</u> <u>Citizens to Pres. Overton Park, Inc. v. Volpe</u>, 401 U.S. 402, 416 (1971), <u>overruled on other grounds by</u>, <u>Califano v. Sanders</u>, 430 U.S. 99 (1977); <u>Ramcor Servs. Group, Inc. v. United States</u>, 185 F.3d 1286, 1290 (Fed. Cir.

1999); The Cube Corp. v. United States, 46 Fed. Cl. 368, 374 (2000); Synetics, Inc. v. United States, 45 Fed. Cl. 1, 5 (1999). The Court must consider whether the decision was based upon consideration of the relevant factors and whether there has been a clear error in judgment. Beta Analytics Int'l, Inc. v. United States, 67 Fed. Cl. 384, 394 (2005).

In determining whether the agency's action was arbitrary or capricious, the scope of the Court's review is very limited. Cincom Systems, Inc. v. United States, 37 Fed. Cl. 663, 671 (1997). In reviewing the agency's procurement decisions, the Court should recognize that the decision is entitled to a "presumption of regularity," Citizens to Preserve Overton Park, 401 U.S. at 415 (citations omitted), and that the Court should not substitute its judgment for that of the agency. Redland Genstar, Inc. v. United States, 39 Fed. Cl. 220 (1997); Cincom, 37 Fed. Cl. at 672; See also M.W. Kellogg Co. v. United States, 10 Cl. Ct. 17, 23 (1986) (holding that "deference must be afforded to an agency's . . . procurement decisions if they have a rational basis and do not violate applicable law or regulations"). Thus, the disappointed bidder "bears a heavy burden" and the procurement officer is "entitled to exercise discretion upon a broad range of issues confronting [her]." Impressa, 238 F.3d at 1332 (citations omitted). This burden "is not met by reliance on [the] pleadings alone, or by conclusory allegations and generalities." Bromley Contracting Co. v. United States, 15 Cl. Ct. 100, 105 (1988); see also Campbell v. United States, 2 Cl. Ct. 247, 249 (1983).

Additionally, if the protestor can show any errors in the procurement process, the protestor must then show that it was "significantly prejudiced" by those errors. Bannum, Inc. v. United States, 404 F.3d 1346, 1354 (Fed. Cir. 2005) (citations omitted). To establish significant

prejudice, the protestor must show that "there was a 'substantial chance' it would have received the contract award but for the errors . . ." Id. (citations omitted).

B.    Standard For Judgment Upon The Administrative Record

Pursuant to RCFC 52.1, this Court reviews an agency's procurement decisions to determine whether they are supported by the already-existing administrative record.  The standards applicable to a motion for judgment upon the administrative record differ from those applied in the context of a Rule 56 motion for summary judgment.  Bannum, 404 F.3d at 1355-56;  Lions Raisins, Inc. v. United States, 51 Fed. Cl. 238, 246-47 (2001); Tech Sys., Inc. v. United States, 50 Fed. Cl. 216, 222 (2001) (explaining basis for summary judgment on the administrative record).  Unlike a Rule 56 motion, "proceeding under RCFC [52.1] merely restricts the evidence to the agency record . . . ." Bannum, 404 F.3d at 1356.  "Thus, the central inquiry on a motion for summary judgment -- whether the movant has proved its case as a matter of fact and law or whether a genuine issue of material fact precludes summary judgment -- has no bearing on a review of the administrative record . . . ." Tech Sys., 50 Fed. Cl. at 222; accord Bannum, 404 F.3d at 1356 (holding that RCFC [52.1] requires a different standard of review without the burden-shifting and presumptions required pursuant to RCFC 56).

Unlike a motion for summary judgment, the question of whether an issue of material fact is disputed has no bearing upon a review of the administrative record in a record review case, such as a bid protest.  The inquiry, instead, is whether, given all the disputed and undisputed facts, the plaintiff has met its burden of proof that the contracting officer's decision was arbitrary, capricious, or contrary to law.  Id. (citing CCL Serv. Corp. v. United States, 48 Fed. Cl. 113, 119 (2000)).  In reviewing an agency's action under this narrow, deferential standard, "the focal point

for judicial review should be the administrative record already in existence, not some record made initially by the reviewing court." Florida Power & Light v. Lorion, 470 U.S. 729, 743-44 (1985) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)); see also Bannum, 404 F. 3d at 1356 (holding that RCFC [52.1] is designed to provide for expedited trial upon a paper record and that the trial court is required to make factual findings based upon the record evidence).

II.    VCA Evaluated Offerors in Accordance With the Solicitation and Applicable Laws and Regulations

The record establishes that VCA properly conducted the initial evaluation and established a competitive range, reasonably excluding, among eleven others, Hyperion. VCA properly exercised its discretion in eliminating Hyperion, the 12th-ranked offeror, and the record shows that it committed no procurement error when doing so.

The FAR, in regard to competitive range determinations, states, "[b]ased on the ratings of each proposal against all evaluation criteria, the contracting officer shall establish a competitive range comprised of all of the most highly rated proposals, unless the range is further reduced for purposes of efficiency pursuant to paragraph (c)(2) of this section." FAR 15.306(c)(1). Additionally, the agency may, provided the solicitation notifies offerors that the competitive range can be limited for purposes of efficiency, limit the number of proposals in the competitive range to the greatest number that will permit an efficient competition among the most highly rated proposals. FAR 15.306(c)(2). The determination of whether a proposal is in the competitive range is principally a matter within the sound judgment of the procuring agency. Dismas Charities, Inc., B-284754, May 22, 2000, 2000 CPD ¶ 84 at 3.[2]

_____

[2] "[Government Accountability Office ("GAO")] determinations are not binding on this Court, but can be persuasive." Cent. Transp. Int'l, LLC v. U.S., 63 Fed. Cl. 336, 339 n.6 (2004)

In the present case, the record demonstrates that the SSAC evaluated each proposal in accordance with the Solicitation's evaluation scheme.  See generally AR 12857 - 905 (SSAC Report).  There can be no real debate that the initial evaluation, as reflected in the record, corresponds to the evaluation criteria in Section M of the Solicitation.  Compare AR 1338-47 (RFP Section M) with AR 12857 - 905 (SSAC Report).  Moreover, the Solicitation expressly advised prospective offerors that the competitive range may be determined for purposes of efficiency.  AR1280.  Thus, when the SSA excluded twelve of the eighteen offerors from the competitive range because they were not amongst the most highly rated proposals, VCA exercised its discretion to determine a competitive range for purposes of efficiency.

Hyperion, however, takes umbrage with VCA's discretionary findings, challenging both its assignment of Red / Unacceptable rating for Technical / Management Factor, as well as significant weaknesses and weaknesses it received related to four of the SITE SOO areas under this Factor.  As is demonstrated below, Hyperion's challenges are meritless.

A.     VCA Evaluated Hyperion Under the Technical / Management Factor in
       Accordance With the Solicitation and Applicable Laws and Regulations

In its first argument for judgment, Hyperion asserts that VCA failed to meet its alleged obligation to conduct a "coordinated, comprehensive" evaluation with a "full assessment" of Hyperion's offer.  Pl.'s Mem. 20-22.  Plaintiff claims the FAR does not explicitly state, but rather "implies a coordinated, comprehensive assessment of Past Performance evaluation and Technical evaluation[.]" Id. at 20 (citing FAR 15.305(a)(2)).  Hyperion claims that its Past Performance rating of Green / Acceptable "cannot be squared" with its Red / Unacceptable rating in the

_____

(citing Fed. Mgmt. Sys. v. United States, 61 Fed. Cl. 364, 367 n.3 (2004)).

Technical / Management Factor.  Id. at 21.  Plaintiff explains the implied requirement of a "coordinated, comprehensive" evaluation obligated VCA to establish a mechanism to ensure that Hyperion's ratings in these two Factors were consistent.  The alleged result of VCA's failure to conduct such an evaluation, according to Plaintiff, is that Hyperion received a Red / Unacceptable rating for the Technical / Management Factor, which is inconsistent with its Past Performance Factor rating.  Hyperion's argument, however, is based upon a misunderstanding of the applicable procurement law, the Solicitation, and the evaluation.

First, Hyperion's argument is inconsistent with applicable law because it misstates the FAR.  To support its argument, Hyperion cites to a FAR section that explains past performance is one factor agencies can use to determine whether an offeror can successfully perform a contract: "Past performance information is one indicator of an offeror's ability to perform the contract successfully."  FAR 15.305(a)(2).  Plaintiff's reading of the FAR, however, would require that past performance be the only indicator of successful contract performance.  According to Hyperion's argument, if an agency found an offeror to have past performance that indicated successful performance, regardless of the technical evaluation criteria and the technical solution proposed by the offeror, the agency would be required to assign a positive rating for both past performance and technical factors.  Such a reading would strip procurements of the need to evaluate technical solutions, as past performance would be the only required factor.  The FAR neither explicitly, nor implicitly, requires such a result.

Hyperion's legal stance is also inconsistent with GAO case law.[3] GAO has held that an offeror is not entitled to be rated more highly under a technical evaluation factor due to past performance where, as here, the solicitation includes a separate past performance evaluation factor and does not provide for considering past performance under the technical factor. Raymond Associates, LLC, B-299496, B-299496.2, May 29, 2007, 2007 CPD ¶ 107. Thus, in accordance with this GAO principle, Hyperion's Green Past Performance Factor rating did not demand that its Technical / Management Factor rating be higher than Red / Unacceptable.

Second, Hyperion misconstrues the evaluation criteria which VCA clearly set forth in the Solicitation. Although plaintiff's argument states that a rating in Past Performance warrants a similar rating in Technical / Management, see Pl.'s Mem. 20-22, the Solicitation explicitly details how these two Factors measured different aspects of an offeror's proposal. Under the first element of the Technical / Management Factor, Technical Experience, offerors were to detail whether they had previous experience performing work similar to the work required by the SITE SOO. AR 1339. Thus, this element measured whether, and to what extent, the offeror has performed similar work to that required under SITE. See AR 1342 ("The offeror has experience-[sic] to meet the requirements for each of the functional areas identified in the SOO.").

Conversely, under the Past Performance Factor, the Solicitation required VCA to measure the degree to which offerors have met contractual promises and satisfied their customers: "Past performance is a measure of the degree to which an Offeror has kept its previous contractual promises and thus satisfied its customers, to include management of teaming arrangements for

---

[3] As is explained supra n. 2, while the Court is not bound by GAO case law, it can be persuasive.

large businesses." AR 1343. The extent and detail to which an offeror performed work similar to the SITE SOO was not a standard to be evaluated by VCA under the Past Performance Factor. See AR 1344. Thus, because the Technical / Management Factor measured the extent of an offeror's experience, while the Past Performance Factor measured the satisfaction of an offeror's client, it is perfectly reasonable for an offeror to receive a Green / Acceptable rating in one Factor and a Red / Unacceptable in another. In other words, while an offeror may have failed to demonstrate that it has sufficient experience in performing the required work, warranting a Red / Unacceptable under Technical / Management Factor, it may have successfully demonstrated that it has satisfied its customers in the past, warranting a Green / Acceptable in the Past Performance Factor.[4]

Third, the Solicitation notified offerors such as Hyperion that separate evaluation panels would be evaluating the Technical / Management and Past Performance volumes of the proposals, making any challenge to this scheme untimely. Specifically, three responses to offeror pre-proposal Questions and Answers warned offerors that cross-referencing between the volumes was insufficient to meet the evaluation criteria because separate evaluation panels would be reviewing the proposals. AR 1511, 1513, 1514, 1545, 1546. As the Questions and Answers were later incorporated into Amendment 0002 of the Solicitation, AR 1283, Hyperion was

---

[4] To the extent that Hyperion protests the distinction between these two ratings, VCA delineated the evaluation criteria in the Solicitation, and Hyperion was required to file its complaint prior to submission of its proposal. See Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1313 (2007) (holding "that a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims.").

required to file a complaint regarding this evaluation scheme prior to submission of its proposal. Blue & Gold Fleet, 492 F.3d at 1313.

Fourth, while the FAR does not require plaintiff's undefined "coordinated, comprehensive" evaluation, VCA did have a "mechanism to reconcile" the evaluation results: the SSAC and SSA. The Source Selection Evaluation Team Report shows that the SSAC reviewed the evaluation reports of each evaluation panel, attaching them to their report. AR 12857. Further, in the SSAC's consensus evaluation of the offerors, the Committee discussed all non-price and price factors. AR 12865-72, 12886-905 (detailing the consensus ratings for the small business offerors under each Factor); 1269-70, 1295-96 (detailing the consensus ratings for Hyperion under each Factor). The SSA then concurred with the SSAC's consensus evaluation, reviewing all the documents. AR 12906. Thus, VCA did have a mechanism to ensure that evaluation of the offerors were both internally and externally consistent.

As such, the record demonstrates that VCA properly and consistently evaluated Hyperion under the Technical / Management and Past Performance Factors. VCA's assignment of different ratings for these two ratings violated no law or Solicitation provision.

B. VCA Assigned Hyperion Weaknesses and Significant Weaknesses Under the Technical / Management Factor in Accordance With the Solicitation and Applicable Laws and Regulations

VCA properly assigned Hyperion significant weaknesses and weaknesses under the Experience element of the Technical / Management Factor. In addition to challenging its receipt of a Red / Unacceptable rating, Hyperion alleges that a "missing mechanism" in the evaluation led to VCA's finding of significant weaknesses and weaknesses in four of the sixteen SOO technical areas. Pl.'s Mem. 22. Hyperion argues VCA never found that "Hyperion lacks the

23

knowledge, expertise, understanding, or ability to successfully perform" but rather "only Hyperion's failure to articulate its 'experience' in sufficient detail to suit the vicissitudes of the team separately evaluating the Technical / Management volumes." Id.

Again, Hyperion untimely challenges the announced evaluation scheme. Plaintiff directly challenges Section M of the Solicitation, which required offerors to "provide the depth and breadth of its experience and expertise performing as a prime or a subcontractor with respect to the functional areas identified in the SOO[.]" AR 1339. Articulation of an offeror's experience was required by the Solicitation, and explicitly stated within. See id. Thus, Hyperion's challenge alleging that this requirement was irrational is untimely. Blue & Gold Fleet, 492 F.3d at 1313. Further, to the extent that Hyperion challenges that the Technical / Management Panel should not have solely evaluated these four areas of the Technical / Management Volume, offerors were warned that separate evaluation teams would be used without cross reference between proposals. See supra Section II.A (citing AR 1511, 1514, 1545, 1546). Hyperion's challenge is untimely. Blue & Gold Fleet, 492 F.3d at 1313.

In addition to being untimely, Hyperion's challenge of these four significant weaknesses and weaknesses is meritless. Hyperion, in its memorandum, does not allege that it provided sufficient details in its Technical / Management Volume to warrant a rating higher than Red / Unacceptable. Rather, it alleges that a mechanism for a coordinated evaluation would have resolved these weaknesses through the Past Performance evaluation. See Pl.'s Mem. 22.

However, both applicable case law and the Solicitation required that Hyperion draft its proposal in a manner that demonstrates its capabilities to the agency. "Offerors carry the burden of presenting 'an adequately written proposal, and an offeror's mere disagreement with the

agency's judgment concerning the adequacy of the proposal is not sufficient to establish that the agency acted unreasonably.'" Software Eng'g Servs., Corp. v. United States, 85 Fed. Cl. 547, 554 (Fed.Cl. 2009) (quoting United Enter. & Assocs. v. United States, 70 Fed. Cl. 1, 26 (2006)). "It is well established that all offerors, including incumbents, are expected to demonstrate their capabilities in their proposals." see also Int'l Res. Recovery, Inc. v. United States, 60 Fed. Cl. 1, 6 (2004) (citation omitted). Furthermore, the Solicitation warned that the information provided in their proposals "should be complete and accurate to enable the Government to assess fully [the offerors'] ability to provide the required services and whether [the offerors] represent the best value to the Government. AR 1329; see also AR 1338.

Here, Hyperion failed to demonstrate in its Technical / Management Volume that it had the expertise to perform the SITE SOO. The burden was on Hyperion to draft an adequate proposal that demonstrated its abilities. See Software Eng'g Servs., 85 Fed. Cl. at 554; Int'l Res. Recovery, 60 Fed. Cl. at 6; AR 1329, 1338. VCA was not required to deviate from its evaluation scheme to bolster Hyperion's inadequate Technical / Management solution.[5]

III.   VCA's Evaluation of Hyperion's Technical / Management Volume Was in Accordance With the Announced Evaluation Criteria

Hyperion, in its next protest ground, argues that VCA deviated from the Solicitation's promise of "a *full* assessment of Offerors' ability to successfully perform . . . ." Pl.'s Mem. 23. Hyperion elaborates that the failure to conduct a coordinated, comprehensive evaluation

---

[5] It should be noted that, under this claim, Hyperion challenges only 4 of the 12 significant weaknesses and weaknesses found by VCA relating to the 16 SOO areas. Even if Hyperion could establish a procurement violation as to these four weaknesses, 8 such significant weaknesses and weaknesses remain.

relegated the Past Performance Factor to a "pass/fail" process and elevated the Technical / Management Factor.  Pl.'s Mem. 23.   Plaintiff's argument is meritless.

It is fundamental that an agency is required to "evaluate competitive proposals and then assess their relative qualities solely on the factors and subfactors specified in the solicitation." Dismas Charities, Inc. v. United States, 61 Fed. Cl. 191, 200 (2004) (quoting 48 C.F.R. § 15.305(a)).

Here, VCA strictly followed the evaluation criteria.  The Solicitation explained that the evaluation of the offerors would be based upon the four evaluation criteria factors that pertain to small businesses, listed in order of importance: (1)  Technical/Management; (2) Past Performance; (3) Security; (4) and Cost/Price.  AR 1338-39.  The Solicitation stated any competitive range determination was to be based upon the enumerated Source Selection Decision process.  AR 1347.  Under this process, VCA was to rank the offers in descending order, based on their individual aggregate non-price evaluation factor scores.  Id.  The Government was to list next to each score the offeror's associated aggregate cost/price and a paired trade-off best value analysis.  Id.  This trade-off was to continue for all proposals until the Government established a Composite Best Value Final Ranking recommendation.  Id.  The SSA was to make a selection decision or competitive range determination using this Composite Best Value Final Ranking Recommendation and following consultation with Source Selection Advisors.  Id.

VCA followed this process when evaluating Hyperion.  During the evaluation of the initial proposals, the Government assigned Hyperion a Red / Unacceptable for the Technical / Management Factor and a Green / Acceptable for Past Performance.  AR 12859.  The SSAC noted these two ratings, as well as the Security rating, and found Hyperion to be the 12th non-

price ranked offer.  AR 12869.  Of the top six non-price ranked proposals,   AR 12859.  The remaining twelve ____ ____ Id.  After performing a trade-off with price, the SSAC found that Hyperion was ranked overall 12th among the offerors.  AR 12861.

Ultimately, the SSAC selected the top six small business offerors for inclusion in the competitive range.  AR 12864.  The SSAC explained that the remaining 12 offerors, which included Hyperion, had numerous significant weaknesses and weaknesses, and some even a deficiency report.  AR 12866  These offerors required entire re-writes of their unacceptable proposals, which prevented them from being good candidates for inclusion in the competitive range.  Id.  The SSAC, performing a trade-off, added that the remaining 12 offerors' cost/prices did not warrant their inclusion in the competitive range.  Id.  The SSA concurred with the SSAC's conclusions.  AR 12906.

It is thus clear from the record that the SSAC and SSA followed the evaluation criteria when performing the competitive range determination.

Furthermore, Hyperion fails to provide any evidence that VCA improperly converted the Past Performance Factor into a pass/fail factor.  While citing no evidence in its brief, Hyperion, at best, implies VCA failed to follow the evaluation criteria because Hyperion's Green / Acceptable rating in Past Performance warranted its inclusion in the competitive range.  Such a

proposition is belied by the record. ██████████████████████████████

████████████ a number too great for an efficient competitive range.

IV.    VCA's Assignment of Red/Unacceptable to Hyperion Under the Technical / Management
       Volume Was Rational and Consistent With the Solicitation's Adjectival Ratings

VCA's assignment of a Red / Unacceptable to Hyperion under the Technical / Management Factor was rational and consistent with the Solicitation. The record shows that, despite Hyperion's objections otherwise, its proposal did not warrant inclusion in the competitive range, or, for that matter, a Yellow / Marginal rating.

Hyperion, in its final protest ground, alleges that VCA irrationally assigned Hyperion a Red / Unacceptable rating for the Technical / Management Factor. Pl.'s Mem. 24-25. Plaintiffs argue that its four assigned strengths and "only minor deficiencies or weaknesses" could have warranted a Yellow / Marginal rating, and ultimately inclusion in the competitive range. Id. a 25. Plaintiff misinterprets the record and attempts to substitute its judgment for that of the evaluators.

The Source Selection Plan provided adjectival ratings by which the evaluators could describe the offeror's Technical / Management volumes. AR 524. Evaluators could assign an offeror a Blue, Green, Yellow, or Red rating. Id. The Plan defined Yellow / Marginal and Red / Unacceptable ratings as follows:

28

| Color | Technical Capability | Strengths | Weaknesses |
|---|---|---|---|
| Marginal (Yellow) | The proposal is marginal; Government doubts the offeror will be able to meet all performance requirements. Based on the Offeror's performance record, doubt exists that the Offeror can satisfactorily perform the proposed effort. | Some strengths exist with limited benefit to the Government | A few weaknesses exist; they are correctable by the Contractor with moderate Government contract administration. |
| Unacceptable (Red) | The proposal is highly inadequate; the offeror cannot meet performance requirements. The proposal is likely to cause serious disruption of schedule, significant increases in cost, erosion of quality, or degradation of performance even with special Contractor emphasis and close Government monitoring. | There are no beneficial strengths. | Numerous weaknesses exist that are so significant that a proposal re-write is not feasible within a suitable timeframe. |

Id.

The record shows VCA's determination that Hyperion should be excluded from the competitive range, as well as receive a Red / Unacceptable rating was rationale. The Technical / Management Panel, in its Report, explained this rating by noting that the Hyperion proposal lacked a depth of experience in core areas of the SITE procurement, leading to serious doubts as to whether Hyperion can successful perform the required work. AR 12524. The Panel found, "[b]ecause of significant weaknesses, due to a lack of demonstrated experience throughout offeror's proposal, the proposal is rated as unacceptable." Id. The Panel explained that while Hyperion did have four strengths under this Factor, its proposal had numerous significant weaknesses and weaknesses. Id. The Panel reported that Hyperion, under the Experience element of this Factor, failed to demonstrate its experience and expertise with respect to 12 of 16 functional areas identified in the SOO, warranting a deficiency report. Id.

Next, the SSAC found that Hyperion had "significant weaknesses and weaknesses . . . across major components of the technical/management functional areas and lacked sufficient evidence to demonstrate [Hyperion] possesses the knowledge[,] depth or breadth to successfully execute 12 of 16 Technical/ Management Assessment Factors of the SITE Statement of Objectives." AR 12870. The SSAC added that Hyperion received a Deficiency Report for its Technical / Management volume. Id. The SSAC explained that the significant weaknesses and weaknesses in Hyperion's proposal could not be corrected in a re-write: "The SSAC unanimously believe[d] [Hyperion] will not be able to correct [its] significant weaknesses or weakness, nor be able to sufficiently demonstrate acceptable depth and breadth of experience in these functional areas." Id.

The SSAC then recommended that those offerors with Red / Unacceptable ratings, because they did not sufficiently demonstrate their expertise and experience, warranted exclusion from the competitive range. AR 12865. The SSAC included Hyperion among these offerors. AR 12859. The SSA concurred with the SSAC's recommendation. AR 12906.

Thus, ultimately, Hyperion received a Red / Unacceptable rating because of the numerous weaknesses and significant weaknesses in its proposal. The SSAC determined that Hyperion would not be able to correct these errors. As such, VCA's assignment of a Red / Unacceptable, which demonstrates a proposal that has "[n]umerous weaknesses . . . that are so significant that a proposal re-write is not feasible within a suitable timeframe[,]" is entirely rational. Moreover, Hyperion's ultimate exclusion from the competitive range for its failure to detail its experience and expertise and inability correct its errors is well-supported and rational.

Hyperion's assertion that its proposal warranted a Yellow / Marginal rating and inclusion in the competitive range is meritless. First and foremost, VCA found the Hyperion could not correct its weaknesses and significant weaknesses. AR 12524, 12869-70. Such a finding prevents Hyperion's proposal from rising to a Yellow / Marginal rating. AR 524 (showing that Yellow / Marginal proposals contain "a few weaknesses" that are correctable). While the evaluators may have identified some strengths in Hyperion's proposal, its inability to be corrected on a re-write prevents the proposal from rising to a Yellow / Marginal rating.

Second, plaintiff's argument improperly elevates the importance of adjectival ratings in the evaluation process. "Adjectival ratings and point scores are only a guide to assist agencies in evaluating proposals; information on advantages and disadvantages of proposals is the type of information that source selection officials should have in addition to ratings and point scores to enable them to determine whether and to what extent meaningful differences exist between proposals." Metcalf Const. Co., v. United States, 53 Fed. Cl. 617, 640-41 (2002). Here, the competitive range determination was not based upon a formulaic comparison of ratings, but was based upon the Government's assessment of the merits and weaknesses of the offerors' proposals. As is explained above, the SSAC recommended to the SSA that those offerors with Red / Unacceptable ratings should be excluded from the competitive range because of their failure to demonstrate their expertise and experience in their proposals. AR 12866. The SSAC added that many of these proposals, like that of Hyperion, could not be corrected on a re-write. AR 12866, 12870. The SSA concurred with this assessment. Ultimately, VCA excluded all 12 offerors whose proposals could not be corrected on a re-write and included those that could be corrected. AR 12866-12867 (noting for each offeror excluded from the competitive range that

their proposals could not be corrected on a re-write); AR 12868-72 (noting that the █████ ████████████ offerors would be able to correct their offers during discussions). Thus, while it is clear VCA considered the color adjectival ratings, using them as guides, the ultimate competitive range determination was based upon an offeror's ability to correct its proposal on a re-write. Hyperion, therefore, was not excluded for the color of its rating, but rather it was excluded based upon a full consideration of its flawed proposal. In short, simply calling Hyperion's proposal Yellow would not cause it to survive the competitive range determination.

Third, Hyperion's argument amounts to mere disagreement with the evaluators' reasonable assessments of its proposal. "It is beyond cavil that 'technical ratings . . . involve discretionary determinations of procurement officials that a court will not second guess.'" Software Eng'g Servs., Corp., 85 Fed. Cl. at 554 (quoting E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed. Cir. 1996)); see also Benchmade Knife Co. v. United States, 79 Fed. Cl. 731, 735 (2007) ("The court 'may not substitute its judgment for that of the agency' if the agency's decision is reasonable.") (citation omitted). "Challenges regarding "the minutiae of the procurement process in such matters as technical ratings . . . involve discretionary determinations of procurement officials that a court will not second guess." Beta Analytics, 67 Fed. Cl. at 395 (quoting E.W. Bliss, 77 F.3d at 449). "The evaluation of proposals for their technical excellence or quality is a process that often requires the special expertise of the procurement officials, and thus reviewing courts give greatest the deference possible to these determinations." Id. (citations omitted). Here, Hyperion simply explains which rating it would have assigned its proposal if it had the opportunity to evaluate it. However, the Court will not substitute Hyperion's judgment for that of the evaluators.

Thus, the record shows that VCA rationally assigned Hyperion a Red / Unacceptable rating for the Technical / Management Factor and excluded it from the competitive range.

V.      Even if Hyperion Can Prove VCA Committed a Procurement Violation, It Cannot Prove That It Was Prejudiced By Such an Error

Even if Hyperion, the 12th-ranked offeror out of 18 small business offerors, can establish that VCA committed a procurement error, it could demonstrate that such an error would have prejudiced Hyperion.

If a protestor can show any errors in the procurement process, the protestor must then show that it was "significantly prejudiced" by those errors. Bannum, 404 F.3d at 1354 (citations omitted). To establish significant prejudice, the protestor must show that "there was a 'substantial chance' it would have received the contract award but for the errors . . ." Id. (citations omitted).

In the present case, Hyperion cannot demonstrate that there is a substantial chance it would be included in the competitive range even if the Court were to find merit with one of Hyperion's raised protest grounds. VCA determined that Hyperion ranked 12th overall among the 18 small business offerors in the SITE competition. AR 12861. Hyperion has not alleged, and cannot do so, that its proposal should be ranked higher than any one of the 11 offerors ranked above it by VCA. Hyperion has not provided any evidence that its proposal should be ranked above any of the five offerors ranked before Hyperion who were also excluded from the competitive range. Furthermore, Hyperion has not alleged, and cannot do so, that its uncorrectable offer should be ranked above one of the six offerors whose proposals were

included in the competitive range, all of whose proposals provided sufficient details regarding

expertise and experience or were correctable.  See AR 12868-72.

In summary, regardless of the merits of Hyperion's protest, Hyperion remains ranked 12th

out of 18 offerors in the SITE procurement, which is well out of any efficient competitive range.

Hyperion is thus not prejudiced in the event the Court finds a procurement violation occurred

during the initial evaluation.

VI.    Even If Hyperion Can Prove That VCA Committed Prejudicial Errors, This Court Should
       Not Permanently Enjoin VCA From Making Awards Using the Current Competitive
       Range

Even if Hyperion could demonstrate a prejudicial error in VCA's exclusion of the offeror

from the competitive range, Hyperion has not demonstrated that a permanent injunction would be

appropriate.

In the event the Court identifies a prejudicial error in its evaluation of the merits of this

protest, it must consider three additional criteria before ordering a permanent injunction: (1)

"whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief"; (2)

"whether the balance of hardships to the respective parties favors the grant of injunctive relief";

and (3) "whether it is in the public interest to grant injunctive relief."  PGBA, LLC v. United

States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citations omitted).

In the present case, Hyperion has not even addressed these factors in its memorandum in

support of its motion, but rather simply requests an injunction.  The Federal Circuit has

recognized that issues raised by plaintiffs after the filing of their dispositive motions are waived

"[a]s a matter of litigation fairness and procedure[.]"  See Novosteel SA v. United States &

Bethlehem Steel Corp., 284 F.3d 1261, 1274 (Fed. Cir.2002) (finding that the plaintiff had

34

waived an argument by failing to raise it in its principle brief before the lower court); see also

United States v. Ford Motor Co., 463 F.3d 1267, 1277 (Fed. Cir. 2006) (finding that the plaintiff

had waived an argument by failing to raise it in its opening brief and stating that "[i]t is unfair to

consider an argument to which the government has been given no opportunity to respond").

Such late issues deprive both the trial court of the opportunity to fully consider the merits and the

opposing party of the opportunity to respond in full.  See Ironclad / EEI v. United States, 78 Fed.

Cl. 351, 358 (2007) (finding that a plaintiff did not waive its argument when it addressed

injunctive relief in its response brief for the first time because the defendant had the opportunity

to respond in its reply brief).

In the present case, this Court should consider Hyperion to have waived its request for a

permanent injunction.  Plaintiff has failed to address the injunctive factors in its only briefing

related to its motion for judgment upon the administrative record.  As plaintiff has deprived this

Court of the opportunity to fully consider injunctive relief on the merits and denied the United

States the opportunity to fully respond, the Court should consider Hyperion's request for

injunctive relief to be waived.

Although it has not disclosed any argument it may have regarding its request for

injunctive relief, we do note that two of the factors discussed in PGBA indicate that a permanent

injunction is inappropriate.[6]  First, the balance of hardships would weigh in favor of denying the

injunction.  As is explained above, VCA intends for SITE to provide IT services and capabilities

to support the intelligence needs of DIA, the Uniformed Services, the COCOMs, and other

---

[6] Plaintiff, because it has not addressed injunctive relief in its memorandum, has not
alleged it would suffer any irreparable harm if the Court were to deny it injunctive relief.
Defendant is thus unable to respond to any theoretical harm plaintiff may suffer.

intelligence agencies.  AR 570-71, 1286, 12857.  SITE will allow the participating agencies to

obtain worldwide coverage for IT requirements and technical support services that will provide

support to the Government through system design, development, fielding, and sustainment of

global intelligence and C2 assets vital to the security of the United States.  AR 1286.  Such

support will be requested for classified projects and in support of deployed forces.  Id.

Contractors will provide support at sites around the world, including locations considered high

risk, crisis, or danger areas.  AR 1286-87.  As such, a permanent injunction will necessarily delay

the roll out of SITE support to the intelligence community and prevent the enhancement of

support for that community.  The harm caused by such a delay would certainly outweigh the lack

of harm experienced by Hyperion.

      Second, it is not in the public interest to grant the request for injunctive relief.  The public

interest is be served by protecting national security interests.  In <u>Magellan Corp. v. United States</u>,

this Court recognized that the Court must give due regard to national security:

> If we were dealing with a procurement for toilet seats or belt buckles, then
> delaying for three weeks a procurement that will evolve over three years
> would be *de minimus*.  In this case, however, we are dealing with hardware
> that, according to General Garner, can give our armed forces a critical
> advantage in combat.  In assessing the need for injunctions, the court must
> give due regard to the interests of national security.  28 U.S.C. §
> 1491(a)(3).

27 Fed. Cl. 446, 448 (1993).  In the present case, the SITE contract vehicle will provide IT

support to the intelligence community of the United States.  A delay in enhancements in the IT

support of the intelligence community could create security risk for the United States.  Thus, it is

not in the public interest to grant Hyperion's requested permanent injunction.

As such, the <u>PGBA</u> factors show that, in the event the Court finds that VCA committed a prejudicial procurement error, a permanent injunction is inappropriate.

<u>CONCLUSION</u>

For these reasons, we respectfully request the Court to deny Plaintiff's motion for judgment upon the record and grant the United States' cross-motion for judgment upon the administrative record.

Respectfully submitted,

TONY WEST
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Kirk Manhardt
KIRK MANHARDT
Assistant Director

OF COUNSEL:
MAJ. MAX D. HOUTZ, USAF
Assistant General Counsel
Litigation Branch
Defense Intelligence Agency

/s/ William J. Grimaldi
WILLIAM J. GRIMALDI
CHRISTOPHER L. KRAFCHEK
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Attn:   Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C.  20005
Tel. (202) 616-0471
Fax. (202) 514-8624

December 3, 2009

Attorneys for Defendant

<u>CERTIFICATE OF FILING</u>

I hereby certify that on this 3rd day of December, 2009, a copy of the foregoing

"DEFENDANT'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD

AND RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT UPON THE

ADMINISTRATIVE RECORD" was filed electronically.  I understand that notice of this filing

will be sent to all parties by operation of the Court's electronic filing system.  Parties may access

this filing through the Court's system.


<u>/s/ William J. Grimaldi</u>