# In the United States Court of Federal Claims

No. 09-758C

(Filed: April 29, 2010)[1]

* * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| HYPERION, INC., | Pre-award Bid Protest; Competitive Range Determination; Indefinite Delivery/Indefinite Quantity Contract. |
| *Plaintiff,* | |
| v. | |
| THE UNITED STATES, | |
| *Defendant.* | |

* * * * * * * * * * * * * * * * * * * * * *

   *Cyrus E. Phillips*, Arlington, VA, for plaintiff. *William H. Butterfield*, Alexandria, VA, of counsel.

   *William J. Grimaldi* and *Christopher L. Krafchek*, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington DC, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Kirk Manhardt*, Assistant Director, for defendant. *Max D. Houtz*, Assistant General Counsel, Defense Intelligence Agency, Litigation Branch, Washington, DC, of counsel.

OPINION

BRUGGINK, *Judge*.

   This action is brought pursuant to the court's bid protest jurisdiction. Plaintiff, Hyperion, Incorporated ("Hyperion"), an unsuccessful offeror in Solicitation HHM402-09-R-0050 ("RFP" or "Solicitation"), alleges that the United States, acting through the Defense Intelligence Agency ("DIA" or "agency") has acted arbitrarily, capriciously, and in violation of law in excluding Hyperion from its competitive range determination ("CRD") of October 7, 2009.

---

   [1]This Opinion was filed under seal on March 29, 2010. On that date, we requested that the parties provide redactions, which they submitted jointly on April 15, 2010. Redactions are indicated by [...].

Currently pending are cross-motions for judgment on the administrative record regarding plaintiff's request for permanent injunctive relief. Oral argument was held December 4, 2009. By agreement of the parties, the matter was stayed pending resolution of two other protests involving the same procurement. We are issuing an opinion in that related matter, consolidated as *ManTech, Inc. v. United States,* 09-804C, contemporaneously. Our disposition of the claims in *ManTech* resolves many of Hyperion's claims so the analysis there will not be repeated in full here. In addition, we rely on the background set out there for most of the facts here, as well as the generally applicable law. For the reasons set out below, we deny plaintiff's motion for judgment on the administrative record and grant defendant's motion.[2]

BACKGROUND

On May 26, 2009, the agency issued the Solutions for the Information Technology Enterprises ("SITE") Solicitation in which it seeks to establish acquisition parameters for delivering information technology ("IT") services and capabilities to the intelligence community.[3] The agency will award to about four large businesses and four small businesses an indefinite delivery/indefinite quantity ("IDIQ") contract. Administrative Record ("AR") 1286. The proposals for the large and small businesses are reviewed separately. The eight winning bidders will be able to compete on a task order basis over the course of a base year and four one-year options. The ceiling amount for the SITE program is $6,600,000,000; the floor is $50,000. The Solicitation provides for a CRD under Federal Acquisition Regulation ("FAR") part 15.306(c)(1) in order to limit the number of potential bidders with which the Contracting Officer would have to negotiate.

On October 7, 2009, the Source Selection Authority's ("SSA"), based on the rankings and recommendations compiled by the Source Selection Advisory Council ("SSAC"), submitted a CRD consisting of six small and six large businesses. He explained his decision regarding the small businesses as follows:

---

[2]We issued an interim order on March 18, 2010 with this result.

[3]SITE seeks to support the DIA, the Uniformed Services, the Combatant Commands ("COCOMs") and other intelligence agencies.

> The SSA decision to select 6 proposals and to exclude [....] and all other Small Business proposals from the competitive range with a rating of red (unacceptable) in the most important evaluation factor, Technical Management, is because even when considering any with more favorable cost, no better cost scores could overcome these lower acceptable Tech/Mgt score and thus the overall value to the Government was lower and at a natural break for all proposals outside of the top 6 proposals.

AR 12907.

Hyperion, a qualified small business teaming with six other small businesses for its proposal, was not one of the six selected. Hyperion received a debriefing from the DIA on October 26, 2009, in which it learned that its proposal was given, inter alia, an "Unacceptable (Red)" rating in the Technical/Management Factor and an "Acceptable (Green)" rating in the Past Performance factor. Hyperion's overall proposal ranked [.......] out of the eighteen small business offerors. Hyperion filed this protest on November 6, 2009.

### DISCUSSION

We have jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491(b) (2009). And we find that the plaintiff has standing to invoke this jurisdiction by virtue of its direct economic interests.

Hyperion asserts that DIA acted arbitrarily, unreasonably, and in violation of law in three ways. First, the DIA, in making its CRD, did not make a coordinated, comprehensive evaluation of the proposals or a full assessment of Hyperion's ability to perform the work the Solicitation requires. Second, DIA's evaluation and subsequent scoring of the Technical/Management Volume was unreasonable. Third, the Technical/Management rating of "unacceptable" was irrational and arbitrary.

#### 1. The Competitive Range Decision

Plaintiff contends that its unacceptable Technical/Management rating cannot be reconciled with its adequate Past Performance rating. The narrative description accompanying its Technical/Management rating provides, in part,

that the "proposal is highly inadequate; the offeror cannot meet performance requirements." AR 524. Plaintiff's Past Performance rating, on the other hand, includes the following narrative: "minimum doubt exists, based on the Offeror's performance record, that the Offeror can successfully perform the proposed effort." AR 525. A similar argument was made and rejected in *ManTech*. We concluded there that such assessments are not inconsistent because the Past Performance evaluators had a fundamentally different task than did the Technical/Management evaluators.

Past performance "is a measure of the degree to which an Offeror has kept its previous contractual promises and thus satisfied its customers, to include management of teaming arrangements for large businesses." AR 518. The evaluators were to make the following assessments after contacting the clients serviced by the bidders' previous contracts: whether previous contracting efforts indicate the scheduling standards were achieved without affecting cost or performance; whether the quality of services provided were professional and at the level expected by the customer; whether the offeror's team can effectively manage large contracts similar in scope, complexity and size; and whether the offeror demonstrated satisfactory previous teaming arrangements and positive business relationships. AR 518.

The Technical/Management evaluators, on the other hand, were required to ensure that the offeror had the "depth and breadth [of] experience and expertise" to "meet the requirements for each of the functional areas." AR 514, 517. The evaluators were probing for detail on particular experience relevant to the Statement of Objectives. For instance, one of nine standards required the offeror to demonstrate "an understanding of the applicable information systems' technical standards required to enable information sharing, integration, and interoperability by using best practices and align the evolving architecture with overarching federal, IC and DOD architecture guidance." AR 518. Another required offerors to provide "an understanding of the US and allied forces' logistics support system and proposes an integrated solution that allows efficient and rapid distribution of assets between DOD and its strategic partners, especially during times of national crisis." AR 517.

Hyperion satisfied customers on related types of work in the past; it was unable to demonstrate to the Technical/Management evaluators that its experience was in the precise areas covered by the Statement of Objectives. These findings are not at odds.

2. Hyperion's Weaknesses within the Technical/Management Factor

The Solicitation lays out five elements and nine standards for the Technical/Management Factor. Of the nine standards, the first addresses technical experience. It is intended to ensure that "[t]he offeror has experience to meet the requirements for each of the functional areas identified in the SOO [Statement of Objectives]." AR 517. The offeror was cautioned to "provide the depth and breadth of its experience and expertise . . . with respect to the functional areas. . . ." AR 514.

Within the technical experience element, Hyperion argues that the evaluators irrationally assigned it "significant weaknesses" for Voice, Secure Voice, Video, and VoIP Operations; and Development and Release Management. The evaluation panel also assessed, wrongfully in Hyperion's view, "weaknesses" in Testing and Verification Services and Acquisition and Property Management.

The SOO requires the following for Voice, Secure Voice, Video and VoIP operations:

> [The offeror must] provide expertise to design, install, integrate and manage existing systems as well as support all upgrade activities or improvements to those systems. This includes all systems included in the teleconferencing architecture to include but not limited to scheduling platforms, user endpoints and multipoint bridging and gateway devices. Additionally, where prescribed, the Contractor will provide specialized or dedicated monitoring of video teleconferencing sessions to ensure quality and success.

AR 1294. The evaluation panel assessed a significant weakness because "[t]he offeror's experience focused on installation rather than operations of the systems specified, and is therefore irrelevant to this functional area." AR 12688.

Hyperion's argument is that the SOO does not call for expertise in "operations," and that the evaluators therefore were introducing a new factor or subfactor. We disagree. "Operate" and "manage" are synonyms. Nor did the panel disregard Hyperion's experience in installation. The evaluators were

within their discretion in assessing Hyperion a lower score for focusing on one aspect of the SOO when the SOO required it to address three others as well.

Hyperion also disputes the assessment of a significant weakness in connection with Development and Release Management. The panel assigned the weakness because Hyperion did not "cite any benefits for the work performed. . . . Without specific results it is impossible for the government to assess how well the offeror performed the work cited." AR 12687. The relevant SOO requires Hyperion to

> develop and apply the appropriate mechanisms for building and releasing software as required by industry best practices for Release Management. The Contractor shall support development and release management activities by implementing structured, repeatable and systematic processes designed to keep the production environments stable, efficient, and auditable to avoid costly downtime. The Contractor shall be responsible for identifying and using mechanisms to streamline planning, implementation, approval and communication for increased deployment reliability, enhanced productivity, system compliance, and overall project success.

AR 1290.

Hyperion argues that the evaluators were irrational in requiring specific results. We disagree. The Solicitation requires Hyperion to "demonstrate depth and breadth of experience and expertise . . . in the [SOO]. . . ." AR 514. The SOO area above requires Hyperion to "develop and apply." AR 1290. The Solicitation thus warns that the evaluation panel would assess Hyperion on its ability to demonstrate depth and breadth of experience in developing and applying the technical requirements of the SOO. The evaluators were within their discretion when they cited Hyperion's lack of specific results as a weakness.

Third, Hyperion disputes its weakness in Testing and Verification Services. The evaluation team assessed the weakness because Hyperion "did not demonstrate adequate depth and breadth of experience" and because the "response provided does not demonstrate a complete appreciation for the complexity and scope of the work intended." AR 12692. Hyperion contends that the phrase "complete appreciation" sets a standard that is not part of the

6

Solicitation's requirements. We view the phrase as a fair restatement of the Solicitation. If Hyperion had shown "depth or breadth of experience" in the relevant areas, we are satisfied that the weakness would not have been assigned.

Finally, Hyperion takes issue with its weakness in Acquisition and Property Management Services. The evaluation team assessed that rating because Hyperion "did not demonstrate adequate acquisition and property management services experience" and "failed to demonstrate acquisition and property management services experience in relation to its proposed team." AR 12689. Hyperion argues that the Solicitation does not require it to demonstrate experience in relation to its team. Hyperion joined with other small businesses precisely because it did not have its own expertise in certain areas within the SOO.

A reasonable interpretation of the evaluators' assessment is that Hyperon's proposal did not show that it had the required acquisition and property management experience. The evaluators considered whether Hyperion's team members had that experience and concluded that none did. It was within the evaluator's discretion to conclude Hyperion's proposal did not indicate which team member if any had acquisition and property management experience. *See Westech Int'l, Inc. v. United States*, 79 Fed. Cl. 272, 296 (2007) ("Undoubtedly, an offeror carries the burden of presenting an adequately written proposal . . .").

3. Hyperion's Adjectival Rating of its Technical/Management Proposal

The final argument plaintiff makes is that the adjectival rating is irrational. The evaluation team rated Hyperion "Unacceptable." Plaintiff argues that the existence of four strengths in the evaluation requires a Marginal rating because "Unacceptable" presumes "no beneficial strengths." A Marginal rating would give Hyperion the same color rating as some of the offerors within the CRD.

The adjectival ratings chart gave prose characterizations for "Unacceptable" with respect to technical capability, strengths, and weaknesses. The Marginal rating indicates that "some strengths exist with limited benefit to the government" but also that only "[a] few weaknesses exist [and] they are correctable by the Contractor with moderate additional Government contract administration." AR 524. The Unacceptable rating, on the other hand,

indicates that "no beneficial strengths" appear and that "numerous weaknesses exist that are so significant that a proposal re-write is not feasible within a suitable time frame." *Id.*

The Technical/Management evaluation panel recognized that Hyperion's proposal had some strengths, but concluded that evidence did not exist of Hyperion's "ability to successfully perform in [..] of 16 functional areas . . . . Because of significant weaknesses, due to a lack of demonstrated experience throughout offeror's proposal, the proposal is rated as unacceptable." AR 12524. It concluded that Hyperion's proposal "fails to meet the government's minimum level of compliance with the RFP requirements [and] [t]he government has no confidence in the offeror's ability to satisfactorily perform in all functional areas of the SOO." AR 12528.

The Source Selection Evaluation Team concurred:

> Offeror's proposal had four strengths. They were in web services, web and application development, cable installation, and a high retention rate. Offeror's proposal had significant weaknesses [......................................................................................................................................................] A further significant weakness was noted in that offeror's proposal does not demonstrate adequate experience [..........................................] Weaknesses include a lack of demonstrated depth and breadth of experience in [.................................................................................................................................................................................................................................] A deficiency report states that offeror's proposal does not provide detailed information and evidence that demonstrates their ability to successfully perform in [..] of 16 functional areas of the SOO. Overall, offeror's proposal lacks a depth of experience across important core IT functional areas and the government seriously doubts that the offeror can satisfactorily perform the proposed effort. Because of significant weaknesses, due to a lack of demonstrated experience throughout offeror's proposal, the proposal is rated as highly inadequate.

AR 12895-96

The SSAC, which reviewed the evaluation panel's report agreed: "The SSAC unanimously believes [Hyperion] will not be able to correct their significant weaknesses or weakness, nor be able to sufficiently demonstrate acceptable depth and breadth of experience in these functional areas. Overall the offeror ranked [....] out of 18." AR 12869.

The adjectival ratings are merely a guide. Hyperion's proposal had numerous significant weaknesses as well as other weaknesses, which the evaluators believed could not be readily corrected. This put Hyperion's proposal within the definition of unacceptable in terms of weaknesses and ineligible for a marginal rating, which was characterized, in terms of weaknesses, as harboring only "[a] few weaknesses [which] are correctable by the Contractor with moderate additional Government contract administration." AR 524. The evaluators were well within their range of discretion in assigning Hyperion an unacceptable rating under these circumstances, even if it had a few strengths.[4]

## CONCLUSION

Hyperion has not shown that the agency acted in an arbitrary way in its technical evaluation or its competitive range decision. The decision to exclude Hyperion from the CRD was not improper. For the foregoing reasons, plaintiff's motion is denied and defendant's motion is granted. The Clerk of Court shall enter judgment for defendant, dismissing the complaint. No costs.

s/Eric G. Bruggink
ERIC G. BRUGGINK,
Judge.

---

[4]We reject plaintiff's other contentions, although not set out herein. For example, plaintiff cannot argue now that the Solicitation must have had a "mechanism to reconcile [the proposal evaluation teams'] inevitably disparate evaluation reports." Hyperion Br in Support of Mot. at 21. Although the Solicitation created a mechanism to reconcile in the form of the SSAC, plaintiff bases its argument on the terms of the Solicitation. Plaintiff acquiesced to the terms of the Solicitation when it submitted its bid on July 16, 2009.